```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 16-684(DSD/BRT)
```

Kathryn Krogh,

       Plaintiff,

v.                                          **ORDER**

Sean Sweeney, and
The GAP, Inc.,

       Defendants.

    Brandon T. McDonough, Esq. and McDonough & Nowicki PLLC, 555 7th Street West, Suite 306, St. Paul, MN 55102, counsel for plaintiff.

    Ryan M. Zipf, Esq. and League of Minnesota Cities, 145 University Avenue W, St. Paul, MN 55103 and Anthony J. Novak, Esq. and Larson King LLP, 30 East 7th Street, Suite 2800, St. Paul, MN 55101, counsel for defendants.

This matter is before the court upon the motions to dismiss by defendants Sean Sweeney and The GAP. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motions are granted.

**BACKGROUND**

This dispute arises from plaintiff Kathryn Krogh's arrest for shoplifting.[1] On October 25, 2015, Krogh went shopping at the Twin

---

[1] Krogh attached numerous documents to the complaint, the contents of which defendants do not dispute. See Compl. Exs. A-Q. The parties agree that the documents may be considered without converting the motion into one for summary judgment. Accordingly, the court will consider the exhibits consistent with Rule 12(b)(6). See Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997)

Cities Premium Outlet Mall in Eagan, Minnesota with her young daughter, her sister, and a friend. Compl. ¶¶ 9, 15. After shopping at several other stores, Krogh and her daughter entered The GAP Factory Store. Id. ¶ 22. At that time, Krogh's daughter was wearing a white and grey winter hat. Id. ¶ 23; id. Ex. B. At some point while in the GAP, Krogh's daughter removed her hat. Id. ¶ 24; id. Ex. C. Thereafter, Brianna Kisch, a loss prevention employee for the GAP, observed Krogh place something in her purse while holding store merchandise. See id. Ex. C; id. Ex. I. According to Krogh, she simply put her daughter's hat in her purse. Id. ¶ 25.

After Krogh purchased several items and left the store, Kisch called 911 to report the perceived theft and to request assistance. Id. Ex. I. Kisch told the 911 dispatcher that she was "almost one-hundred percent sure [Krogh] put items ... in her purse .... I saw her, saw her conceal them on the camera." Id. at 1. Kisch further stated that she did not stop Krogh while she was still in the store because she was "not one-hundred percent sure if it's still in her purse." Id. She told dispatch that her supervisor would not allow her to question Krogh outside of the store. Id. Kisch also indicated that she did not have time to stop Krogh before she exited the store, despite having followed Krogh around the store

---

(holding that when a complaint relies on documents whose content is undisputed, the court may consider such documents without converting the motion into one for summary judgment).

for several minutes after seeing Krogh put something in her purse. Id.; id. ¶¶ 46-49. Kisch did not conduct an inventory search before calling 911. Id. ¶ 52.

Sweeney, an Eagan police officer, was dispatched to the scene along with Officer Alison Burstein. Id. Ex. O, at 4. After Kisch showed Sweeney security footage of the incident, he and Burstein searched the mall for Krogh. Id. On locating Krogh, Sweeney ordered her to his squad car. Id. ¶¶ 30, 32. When Krogh asked why, Burstein said "Don't make me put you in handcuffs in front of your daughter." Id. ¶ 33. Sweeney then arrested Krogh and placed her in the back of her squad car. Id. ¶¶ 54, 55, 70. Sweeney searched Krogh's purse and her sister's vehicle,[2] but did not find any items from the GAP. Id. ¶¶ 72, 73, 75. Sweeney observed that the vehicle contained items with tags that were not in store bags. Id. ¶ 77. Krogh offered to show Sweeney receipts from her purchases, but he declined to review them, allegedly commenting "all thieves are liars." Id. ¶¶ 79, 83, 84. Sweeney told Krogh that there was surveillance footage of her in the GAP, but he declined her request to review the footage with him. Id. ¶¶ 85-87. Sweeney cited Krogh for misdemeanor theft and released her. Id. ¶ 89; id. Ex. P. Krogh alleges that Sweeney then berated her in front of her daughter, sister, and friend. Id. ¶¶ 92-95, 98.

---

[2] Krogh drove to the mall with her sister and had the keys to her sister's vehicle at the time of her arrest.

3

According to the police report, Sweeney returned to the GAP after Krogh's release and again conferred with Kisch.  Id. ¶ 99. Kisch told Sweeney that Krogh's sister overheard her call with 911 and speculated that Krogh may have discarded the stolen merchandise after leaving the store.  Id. ¶¶ 102-106; id. Ex. O, at 4.  The report states that Krogh stole two toddler shirts worth $40 by concealing them in her purse.  Id. Ex. O, at 3, 4.

Krogh ultimately accepted the prosecutor's offer to dismiss the charge if she remains law abiding for six months.  Id. Ex. I, at 3; id. ¶ 126.  Krogh then filed this suit alleging that Sweeney arrested her without arguable probable cause and fabricated the evidence against her in violation of 42 U.S.C. § 1983, and that the GAP defamed her by reporting the perceived theft.  Defendants now move to dismiss.

## DISCUSSION

**I.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that

4

the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). As noted, the court considers the documents attached to the complaint and the surveillance footage from the GAP, the contents of which are undisputed and screen shots of which are attached to the complaint.

**II. Sweeney's Motion**

Section 1983 is not an independent source of rights, and a successful claim must demonstrate a deprivation of a specific right, privilege, or immunity. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In this case, Krogh alleges that her constitutional rights were violated when Sweeney (1) unlawfully arrested her in violation of the Fourth Amendment, and (2)

5

fabricated evidence in violation of the Fourteenth Amendment.

Sweeney argues that he is immune from suit under the doctrine of qualified immunity. "[Q]ualified immunity protects [law enforcement] officers from personal liability under § 1983 insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (citation and internal quotation marks omitted). The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether Sweeney is entitled to qualified immunity, the court first considers whether the alleged facts demonstrate that his conduct violated a constitutional right and, if so, whether the right claimed was clearly established at the time of the alleged injury. Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). "If the answer to either question is no," then Sweeney is entitled to qualified immunity. Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010).

### A. Unlawful Arrest

Krogh argues that she was unlawfully arrested without probable

6

cause.[3]  Where, as here, the claim is for damages, qualified immunity attaches if the officers "had arguable probable cause to make the arrest." Galarnyk v. Fraser, 687 F.3d 1070, 1074 (8th Cir. 2012) (citations and internal quotation marks omitted). "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011) (quoting Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." Peterson v. Kopp, 754 F.3d 594, 598 (8th Cir. 2014). "Though the probable-cause standard allows room for reasonable mistakes by a reasonable person, the qualified-immunity standard protect[s] all but the plainly incompetent or those who knowingly violate the law." Greenman v. Jessen, 787 F.3d 882, 888 (8th Cir. 2015) (citations and internal quotation marks omitted).

Here, Sweeney had arguable probable cause to arrest Krogh. Sweeney responded to the scene based on the 911 call by Kisch. Sweeney then reviewed the surveillance footage that triggered

---

[3] The parties dispute whether Sweeney arrested Krogh or merely stopped her pursuant to Terry v. Ohio, 392 U.S. 1 (1968). Because Sweeney's incident report states that he arrested Krogh for theft, Compl. Ex. O, at 4, the court will consider Krogh's detention an arrest for present purposes.

Kisch's suspicion. The footage shows Krogh putting something in her purse while shopping. See McDonough Decl. Ex. A, at 2:02:24-31. It is unclear whether the item was her daughter's hat, as she alleges, or merchandise from the GAP. Even assuming the item was in fact her daughter's hat, the information Sweeney relied on was adequate to support the arrest.

Krogh argues that Sweeney's conduct was not objectively reasonable because he failed to fully investigate the matter before arresting her. Specifically, Krogh contends that Sweeney should have first viewed the entirety of the surveillance footage because it would have established that the item was her daughter's hat. "Officers are not required to conduct a 'mini-trial' before arrest, but probable cause does not exist when a minimal further investigation would have exonerated the suspect." Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008) (citations and internal quotations omitted). Even assuming it would have been reasonable for Sweeney to take the time to review all of the security footage at the outset, that footage does not exonerate Krogh. Although the footage does show Krogh's daughter wearing a hat while in the GAP and later walking around without the hat on, it does not capture the moment her daughter removed the hat and gave it to Krogh. See Compl. Exs. B and C. Nor does it plainly show that Krogh put the hat, rather than something else, in her purse. As such, even if Sweeney had viewed all of the footage, he would not have been able

8

to conclude with any degree of certainty that the item Krogh put in her purse belonged to her rather than the GAP. It is certainly plausible, and the court assumes, that the item was indeed her daughter's hat. But based on the information available to Sweeney and the totality of the circumstances, he is shielded from liability under the doctrine of qualified immunity.

Krogh's argument that there was no arguable probable cause for her arrest because Kisch was uncertain that Krogh put store merchandise in her purse and Kisch could have confronted Krogh while she was still in the store is likewise unavailing. Neither fact renders Sweeney's conduct objectively unreasonable. Dismissal of Krogh's Fourth Amendment claim is warranted.

### B.   Fabrication of Evidence

Krogh next alleges that Sweeney violated her substantive due process rights by fabricating evidence in his post-arrest report.[4] Krogh specifically alleges that Sweeney fabricated evidence by reporting that Krogh shoplifted two toddler shirts worth $40. "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992) (citation and internal quotation marks omitted). In a substantive

---

[4] Krogh also alleges that Sweeney violated her due process rights by falsely arresting her. As discussed, Krogh's arrest was supported by arguable probable cause and therefore does not provide a basis for her due process claim.

9

due process claim, a plaintiff "must demonstrate <u>both</u> that the official's conduct was conscience-shocking ... <u>and</u> that the official violated one or more fundamental rights ...." <u>Moran v. Clarke</u>, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring) (citations omitted and emphasis in original).

The allegations simply do not present conscience-shocking behavior. "A plaintiff must establish the government action complained of is truly irrational, that is something more than ... arbitrary, capricious, or in violation of state law." <u>Mills v. City of Grand Forks</u>, 614 F.3d 495, 498 (8th Cir. 2010) (alteration in original) (citation and internal quotation marks omitted). "Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to [the] level" of conscience-shocking. <u>White v. Smith</u>, 696 F.3d 740, 757-58 (8th Cir. 2012) (citation and internal quotation marks omitted); <u>see, e.g.</u>, <u>Rogers v. City of Little Rock, Ark.</u>, 152 F.3d 790, 797 (8th Cir. 1998) (finding that rape of woman by on-duty police officer was conscience-shocking). The determination of whether an official's conduct shocks the conscience is a question of law. <u>Hayes v. Faulkner Cty., Ark.</u>, 388 F.3d 669, 675 (8th Cir. 2004). Nothing in the complaint suggests any malice, abuse of power, intent to harm, or other behavior approaching the standard of

conscience-shocking.[5]

Krogh's allegation that Sweeney stated, without any basis, that Krogh shoplifted two toddler shirts worth $40 - although curious - does not rise to the level of conscience-shocking behavior. Further, Krogh's allegation that Sweeney inaccurately reported that she acted furtively after leaving the store is insufficient to support her due process claim. Sweeney simply noted Kisch's observations in the report, and did not opine as to the veracity of those observations. See Compl. Ex. O, at 4. Although unclear, it appears that Krogh may also claim that Sweeney violated her due process rights by berating her. Her allegations in this regard do not rise to the level of conscience-shocking, however.

Krogh has also failed to allege that Sweeney violated one of her fundamental rights. Fundamental rights are those "which are, objectively, deeply rooted in this Nation's history and tradition." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (citations and internal quotation marks omitted). "In all of the cases in which the Eighth Circuit has suggested that an unfair investigation may have deprived the accused of substantive due process, the investigation caused a separate deprivation of life, liberty, or property." Lawrence v. City of St. Paul, 740 F. Supp. 2d 1026,

---

[5] In so holding, the court, of course, does not condone verbal or any other kind of abuse by police officers.

1038 (D. Minn. 2010) (emphasis in original). No such deprivation is alleged here. Krogh does not allege that Sweeney's post-incident report resulted in loss of life, liberty, or property. As a result, dismissal of Krogh's substantive due process claim is warranted.

### III. The GAP's Motion

Krogh alleges that Kisch, and by extension the GAP, engaged in defamation per se by falsely reporting that she shoplifted and later falsely opining that Krogh discarded the stolen item after her sister overheard Kisch's 911 call. For defamation, a plaintiff must show that "the defendant made a false and defamatory statement about the plaintiff ... in unprivileged publication to a third party ... that harmed the plaintiff's reputation in the community." Pope v. ESA Servs., Inc., 406 F.3d 1001, 1011 (8th Cir. 2005) (citation and internal quotation marks omitted), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). Statements that falsely accuse a person of a crime are actionable per se, without proof of actual damages. Longbehn v. Schoenrock, 727 N.W.2d 153, 158 (Minn. Ct. App. 2007).

The GAP argues that even if Kisch's statements were false, they were protected by qualified privilege. A statement is protected by qualified privilege if it was "made in good faith and ... upon a proper occasion, from a proper motive, and ... upon reasonable or probable cause." Bol v. Cole, 561 N.W.2d 143, 149

(Minn. 1997) (citation and internal quotation marks omitted). This protection may include "a good faith report of suspected criminal activity to law enforcement officials." Smits v. Wal-Mart Stores, Inc., 525 N.W.2d 554, 557 (Minn. Ct. App. 1994).

Even accepting Krogh's version of events, Kisch's statements do not defeat the GAP's qualified privilege. First, Krogh does not plausibly allege that Kisch's statements were made in bad faith. Krogh argues that Kisch's bad faith is evidenced by her failure to question Krogh while she was still in the store. As Kisch explained to the 911 dispatcher, however, she did not approach Krogh in the store because she was not "one-hundred percent sure if it's still in her purse." Compl. Ex. I, at 1. Although she also indicated that she "couldn't reach [Krogh] in time," when read together the two statements indicate that Kisch was unsure about what Krogh put in her purse and unsure of how best to proceed. Notably, Krogh does not allege that Kisch reported facts to 911 that were inconsistent with her observations or in reckless disregard for the truth. Krogh has failed to allege bad faith under these circumstances.[6]

---

[6] Krogh also alleges that Kisch defamed her by telling Sweeney – post arrest – that Krogh likely discarded the shoplifted merchandise after her sister overheard the 911 call. See Compl. Ex. O, at 4 ("They then split up and went their separate ways. Kisch feels that it was at this point that the Gap merchandise was most likely ditched in a trash can or some other location."). But that statement simply reflects Kisch's opinion about what may have happened after Krogh left the store, and therefore does not constitute a false statement of fact.

13

Second, Krogh fails to plausibly allege that Kisch made the statements without proper occasion, with improper purpose, and without probable cause.  As already discussed, there was probable cause to believe that Krogh shoplifted an item from the GAP based on the surveillance footage alone.  Krogh alleges no facts to undermine the propriety of the 911 call that followed.  The exigencies of the circumstances excused Kisch from reviewing all of the surveillance footage and from conducting an inventory search before calling 911.  As a result, Kisch's statements are privileged.

"A qualified privilege is abused and therefore lost if the plaintiff demonstrates that the defendant acted with actual malice."  Lewis v. Equitable Life Assurance Soc'y of U.S., 389 N.W.2d 876, 890 (Minn. 1986).  To show actual malice, however, Krogh must show that the statements were "made ... from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the [her]."  Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 920 (Minn. 2009) (alteration in original) (citation and internal quotation marks omitted).  Krogh has failed to plead such facts.  Therefore, dismissal of the defamation claim is warranted.

**CONCLUSION**

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1. The motions to dismiss [ECF Nos. 12 and 14] are granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: July 14, 2016

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court